# In the United States Court of Federal Claims

No. 12-771C
(Originally Filed: January 11, 2013)
(Reissued: January 22, 2013)[1]

* * * * * * * * * * * * * * * * * * * *

OSC SOLUTIONS, INC.,

        *Plaintiff*,

v.

THE UNITED STATES,

        *Defendant*,

and

NOBLE SUPPLY & LOGISTICS,

        *Intervenor*.

* * * * * * * * * * * * * * * * * * * *

OPINION

      This is a post-award bid protest. On April 27, 2012, the Department of the Navy issued Solicitation No. N00604-12-T-3068 ("RFQ") for the award of a Blanket Purchase Agreement ("BPA"), with a base period of one year plus four option years. On July 5, 2012, the Navy awarded the BPA to Noble Supply & Logistics ("Noble" or "intervenor"). Plaintiff OSC Solutions, Inc. ("OSC") protested the award before the General Accountability Office, which rejected the challenge on October 31, 2012. On November 13, 2012, plaintiff filed its complaint in this court, requesting that we enjoin Noble from performing on the BPA. We denied the motion for preliminary injunction on November 20, 2012. The parties thereafter submitted cross-motions for

---

[1] Publication was deferred pending the parties' review for redaction of protected materials. Those redactions are indicated by brackets.

judgment on the administrative record, and defendant has moved to dismiss for lack of standing. We held oral argument on January 4, 2013, at which time we announced our decision rejecting plaintiff's protest. We explain our reasons below.

## BACKGROUND[2]

The Navy, through the NAVSUP[3] Fleet Logistics Center Pearl Harbor, issued the RFQ[4] in order to set up a hardware store at Joint Base Pearl Harbor-Hickam. AR 642. The store will support the Naval Facilities Engineering Command, Hawaii ("NAVFAC HI"), which "delivers best value planning, engineering, public works, environmental, and acquisition services in Hawaii to Navy, Marine Corps, DoD, and other federal agency clients." AR 5. NAVFAC HI's service region includes Pearl Harbor and parts of Oahu and Kauai islands. AR 329. Only companies with Federal Supply Schedule ("FSS") contracts with the General Service Administration ("GSA") could bid on the RFQ.[5] The BPA contemplates that the contractor will operate the store in a facility provided by the Navy, from which the Navy will then order goods and services.

Proposals were to consist of two volumes: a technical submission and

---

[2]The facts are drawn from the Administrative Record. We allow as supplements to the record the materials referenced in footnotes 7 and 9, as well as the Ayers affidavit attached to defendant's motion for judgment on the administrative record. We cite the Ayers affidavit as it reflects agency action taken pursuant to the solicitation. The items referenced in footnotes 7 and 9, while not in front of the Navy, provide confirmation of the General Service Administration's approval of Noble's updated price schedule.

[3]"NAVSUP" refers to Naval Supply Systems Command.

[4]Unless otherwise noted, "RFQ" refers to the RFQ as subsequently amended.

[5]The FSS contains schedules in which government contractors participate. Federal Acquisition Regulation 38.101 (2012). Agencies use these schedules to order services or products from contractors. John Cibinic, Jr., Ralph C. Nash Jr., & Christoper R. Yukins, *Formation of Government Contracts* 1143-44 (4th ed. 2011).

a price submission. The award was to be made to the lowest priced, technically acceptable proposal. AR 272. The Navy listed proposal requirements within the form provided by Federal Acquisition Regulation ("FAR") 52.212-2 (2012).

Technical submissions had to address three categories: inventory management, the point-of-sale system, and the transition plan. AR 349-50. This protest does not draw into question either OSC's or Noble's technical submissions. The only issue concerns pricing.

Price submissions were to be compared by bidders' submissions of their prices for a "Test Market Basket," AR 272, which called for a bidder's pricing of a sample group of items, consisting of 146 products out of the numerous items the Navy could order. AR 1369. Although the Navy will order other items, it was anticipated that the Market Basket would reflect "the highest volume and highest dollar value items from NAVFAC HI's historical data for the past two years." AR 580. The Performance Work Statement of the RFQ, at Section 3.19.2, states the following about the Market Basket:

> Pricing: The Contractor shall provide a material price list for the base year and each option year period of performance. Under this contract, the Contractor shall NOT sell any product listed in the [Market Basket] (Attachment V) above the corresponding price provided. All items in Attachment V shall be based on a commercial benchmark, such as GSA Schedule Pricing, a published price list, a catalog, or otherwise established prices as described in the Contractor's proposed pricing methodology.

AR 260.

For each item in the Market Basket, the Navy provides the item number, the name of the item, and the historical quantity. AR 661. The offeror is to fill in the remaining information, including a GSA Schedule unit price, offeror's discount percentage, discounted unit price, and total evaluated line item price. AR 661. For the base period and each option year, a total evaluated price is provided by the offeror. AR 661, 672, 678, 684, 690.

As to information sought, the RFQ includes the following direction, based on FAR 52.212-2:

> The contractor shall complete the Test Market Basket Items Price Schedule for the base period and each option period as they would be offered for sale to customers at the storefront location. . . . The vendor shall include in [the Market Basket] the benchmark GSA catalog price of each item listed and the quoted percentage discount rate that will be applied to all materials for the anticipated base performance period and each option performance period. The discount percentage is the overall discount rate (same rate for all items) that will be applied to each item for each order. All quoted prices must be substantiated by the GSA catalog commercial benchmarks.

AR 350. The "benchmark GSA catalog price" and the "percentage discount rate" reference the Market Basket columns to be filled in by the bidder. *See* AR 661. A "benchmark GSA catalog price" refers to a price from a GSA Schedule contract.

The RFQ then directs the contracting entity to evaluate each price submission:

> in accordance with FAR 15.404-1. The [Procuring Contracting Officer] will evaluate the Test Market Basket Items Price Schedule by comparing the prices with other contractor's Test Market Basket Items Price Schedule. The result of multiplying the historical quantity for each item by the discounted period unit price for the base period and all option periods will be used to determine the total evaluated price to support the selection of the lowest priced technically acceptable quote.

AR 351.

In reference to the Market Basket, OSC emailed a question to the contracting officer. AR 1154. This question became part of the solicitation through Amendment 0002 and appears in the Questions and Answers ("Q&A") document: "Do products offered in Attachment V (Sample Price Schedule) [Market Basket] in response to the RFQ have to be on GSA schedule contract by the time the offer is submitted or on GSA contract by the time the Navy makes an award?" *See* AR 61, 245, 621, 1154.

The initial answer was: "At the time the offer is submitted." AR 621.

A subsequent answer, incorporated into the Q&A as item 32 by Amendment 0005, is different: "The products offered in Attachment V must be on schedule at the prices proposed by performance of the contract in accordance with the 30 day transistion [sic] period under PWS Paragraph 3.10." AR 245, 622.[6] OSC made no further inquiries about Q&A item 32.

Four companies with GSA Schedule contracts–Noble, OSC, [ ], and W.W. Grainger–submitted bids by the due date of May 29, 2012. AR 299, 577. In its initial price proposals, OSC offered a total evaluated price for the base year of [ ]. AR 582. Adding in the option years yields a total price of [ ]. AR 582. [ ] offered [ ], while Grainger submitted a price of [ ]. AR 582.

Noble offered a total evaluated price of [ ], with a total price of [ ]. AR 582. Noble used its then-existing GSA Schedule prices.[7]

The Navy judged all the technical submissions as unacceptable. AR 578. In addition, while OSC and [ ] submitted conforming price quotes, Noble and Grainger did not. AR 581-82. Noble's price quote was not conforming because the items in its Market Basket list were subject to varying discount rates, contrary to the RFQ, which called for a single discount rate for all items. On June 5, 2012, the Navy sent letters telling each offeror how to make corrections. AR 1370.

Revisions were due by June 7, 2012, creating a two-day window. *See* AR 873. Noble submitted its revisions on June 7, applying a [ ] percent discount rate to all of the items in the Market Basket. AR 905-37. Its total evaluated price and overall price remained the same, [ ] and [ ]. AR 612-13, 910. OSC asserts and we think it undisputable that Noble adjusted its "base," i.e., undiscounted item prices, to ensure that application of a fixed discount rate produced the same net price as reflected in its original bid.

For its part, OSC submitted a corrected technical revision on June 6,

---

[6]The transition period begins after the contracting officer provides a notice to proceed. AR 254.

[7]There were a small number of items in the Market Basket list that did not appear on Noble's existing GSA Schedule contract. The same was true for OSC.

5

which did not affect its pricing. AR 775-801. The total prices of [   ] and Grainger remained the same for the final evaluation. AR 614-15.

In her price narrative, the contracting officer determined that all of the prices were "fair and reasonable." AR 616. She noted that the proposals "included pricing from their GSA Schedule . . . to complete Attachment V." AR 612-15. With respect to Noble, she stated that it included "pricing from their GSA Schedule, GS-06F-0032K." AR 612. She also found that the submissions from Noble, OSC, and [   ] "fully addressed the requirements of FAR 52.212-2, paragraph 2 of the RFQ in Section Vol. II of their proposal." AR 612-15. Although Grainger failed to provide a discount rate for all option years, its submission "addressed all of the requirements." AR 615.

If the contracting officer's summary with respect to Noble's bid was an assertion that Noble's prices were based on its then-existing GSA approved schedule, her summary was incorrect. As we mention above, Noble's original bid was based directly on the then-current GSA Schedule price list, but its amended bid was not. We find it highly unlikely, however, that the contracting officer was unaware of that fact. In the two days allotted, it would have been impossible for a bidder to submit a new price list to GSA and have it approved in time. For that reason, we also count it highly unlikely that the contracting officer "substantiated" Noble's price list against the GSA Schedule. Whether any of that matters we leave to discussion below.

The Source Selection Authority awarded the BPA to Noble, finding that it "provided the lowest priced technically acceptable quotation to the Government." AR 623-24. On July 2, 2012, the Navy issued an order form that would create a BPA between the government and Noble. AR 966.

On July 11, 2012, Grainger filed a protest of the award with the Government Accountability Office ("GAO"). AR 1295. It alleged that "over 50 percent" of Noble's Market Basket contained items that are "not currently on Noble's GSA Schedule." AR 1301. For that reason, Grainger alleged that the Navy did not give a reasonable technical evaluation of Noble's offer. AR 1301-02. Grainger also asserted that the Navy failed to make a proper price evaluation, asserting that Noble showed "size and quantity variations" that affected pricing. AR 1304. According to Grainger, the Navy failed to account for the effects of Noble's nonconforming price submission. AR 1304. Noble received a stop work notice on July 17, 2012. AR 1075. The Navy told Noble that, until resolution of the protest, the Navy would suspend orders under the

BPA. AR 1075.

On July 22, Grainger supplemented its protest, alleging that the Navy failed to verify that Noble's "prices were 'substantiated' by Noble's GSA Schedule catalog pricing." AR 1318. The protest asserted that the evaluation of prices was flawed because the Navy did "not know the true impact of the offered discounts or actual price differences between and among offerors." AR 1318.

OSC filed its own GAO protest on July 24, 2012. In a fashion similar to Grainger, it argued that the Navy performed a flawed price evaluation. AR 1331. OSC contended that the Navy failed to check each item in Noble's Market Basket to ensure that the item listed conformed to RFQ requirements. AR 1331. According to OSC, Noble gained unfair price advantages as a result of this nonconformity. AR 1332.

Grainger withdrew its GAO protest on August 20, 2012. AR 1433. On October 31, 2012, the GAO denied the protest, despite finding that the award lacked an evaluation of item prices. AR 1473, 1477. The decision recites that the Navy "did not verify whether the individual item prices included in Noble's Test Market Basket Items Price Schedule were Noble's current FSS prices or were based on Noble's current published or established prices." AR 1477. The Navy also failed to compare the item prices provided by each offeror in the Market Baskets. AR 1477. It "only compared the vendor's total evaluated prices." AR 1477.

The GAO upheld the Navy's evaluation for several reasons. It pointed out that FAR 15.404-1 "does not indicate that prices must be evaluated by the agency under a fixed-priced contract to ensure that they are consistent with FSS or catalog prices." AR 1477. The decision further noted that the regulation does not require the Navy to compare the item prices in the Market Baskets of each offeror. AR 1477. GAO emphasized that, in any case, Noble would have to provide the "items at the prices quoted." AR 1478. Stating that the RFQ "expressly encouraged" price decreases from current FSS or catalog prices, the GAO noted that "it could reasonably be anticipated that vendors['] prices would not match existing FSS or catalog prices." AR 1478. The GAO found, furthermore, that OSC did not show that "it was prejudiced" because Noble's overall price did not change from the initial quote to the revision. AR 1478.

In a footnote, GAO remarked that the GSA Schedule unit prices in Noble's Market Basket "are now included in Noble's FSS contract at the quoted benchmark prices." AR 1478. This is confirmed by a declaration of Noble's chief operating officer,[8] an email from Noble to NAVSUP dated August 23, 2012,[9] and representations made during oral argument.[10] It is evident that Noble's GSA Schedule prices were changed by August 17, 2012, to conform to the prices proposed in its June 6, 2012 submission.

On October 31, 2012, the Navy received notice that OSC's GAO protest was denied. Def.'s Brief App. A, "Second Statement of Bruce Ayres" ¶ 15.[11] The Navy then issued Noble a notice to proceed on November 2, 2012, under which Noble would begin to set up the hardware store "in accordance with the thirty (30) day transition period set forth in the award." *Id.* App. A ¶ 16. The store opened on December 13, 2012, providing goods and services ordered by the Navy. *Id.*

Plaintiff filed its complaint here on November 13, 2012. Its principal argument is that Noble's Market Basket did not comply with what it contends

---

[8] According to Thomas W. Noble III, "on August 17, 2012, GSA approved a Modification to Noble's GSA Contract No. GS-06F-0032K, and as of that date, all 146 Market Basket items are on Noble's GSA Contract . . . at the prices proposed by Noble in its Revised Market Basket." Intervenor Notice of Aff. Attach. 1, "Declaration of Thomas W. Noble III" ¶ 10. Intervenor submitted this affidavit on November 30, 2012, in response to our request during argument on the motion for preliminary injunction.

[9] On August 23, 2012, Thomas Noble sent an email to NAVSUP with information about Noble's "GSA Contract Modification." AR 1081. He provided a link to "the exact excel spreadsheet which was approved by our GSA Contracting Officer on August 17th." AR 1081.

[10] At oral argument, intervenor's counsel submitted Standard Form PS-0058 to the court, which shows an update to Noble's GSA Contract No. GS-06F-0032K. The form makes price adjustments and reductions to that contract and has an effective date of August 17, 2012.

[11] "Def.'s Brief" refers to Defendant's Motion to Dismiss, Cross Motion for Judgment Upon the Administrative Record, and Response to Plaintiff's Motion for Judgment on the Administrative Record.

is a requirement in the solicitation. It asserts that the GSA Schedule unit prices in Noble's Market Basket had to match the then-existing prices on Noble's GSA Schedule contract. OSC contends that the Navy should have rejected Noble's Market Basket and forced it to apply a [  ] percent discount against the GSA Schedule prices in existence at the time of the bid submission. It contends that if that had happened, Noble's price would have been higher than OSC's price.

Defendant has moved to dismiss, contending that OSC's failure to enquire as to the agency's intent in answering OSC's pre-award question about the GSA Schedule bars plaintiff from asserting its own interpretation now. Both defendant and intervenor also cross-move for judgment on the administrative record.

DISCUSSION

According to plaintiff, the Navy's procurement strategy, the Performance Work Statement, the language in FAR 52.212-2, and the Q&A show that Market Basket prices had to match then-existing GSA Schedule prices. One requirement upon which plaintiff relies is that "quoted prices must be substantiated by the GSA catalog commercial benchmarks." OSC points out that, according to the Navy's Market Research Memorandum, this requirement ensured the Navy that base prices would be reasonable, because they had been approved by GSA. It matters, therefore, according to plaintiff, that Noble's Market Basket was based on prices that were only later placed on the GSA Schedule. Because proposals that violate material requirements of a solicitation should be rated unacceptable, *Allied Technology Group, Inc. v. United States*, 94 Fed Cl. 16, 40 (Fed. Cl. 2010), plaintiff asserts that the award to Noble was irrational and a violation of the Competition in Contracting Act. 41 U.S.C. § 3301 (Supp. V 2011).

We need not resolve whether the original solicitation should be read as plaintiff proposes.[12] The solicitation was amended by the Q&A, in a way that

---

[12] We note, however, that the Navy, and thus the public, was not harmed by Noble's lateness in conforming its GSA Schedule prices to its bid prices. In fact the Navy will pay less for the same products, and there is no question that Noble will furnish products which fully comply with the solicitation. The only potential deviation is with respect to *how* Noble came up with its final
(continued...)

obviated the lack of current GSA Schedule prices in Noble's Market Basket. OSC asked whether "products offered in Attachment V. . . have to be on GSA schedule contract by the time the offer is submitted." AR 621. As shown in Q&A item 32, the ultimate answer was, "The products offered in Attachment V [the Market Basket price list] must be on schedule at the prices proposed by performance of the contract in accordance with the 30 day transistion [sic] period under PWS Paragraph 3.10." AR 622.

During oral argument, counsel for OSC indicated that OSC was not concerned, in posing its question, with the circumstances Noble faced, namely, an out of date GSA Schedule price list. Instead, OSC was concerned about the fact that a few of the items listed by the Navy in the Market Basket did not appear on OSC's GSA Schedule contract. In other words, it would have to make relatively minor adjustments to the GSA Schedule in order to conform to its bid, but only by *adding* products, not by adjusting prices to previously listed products. The question and the answers to it, however, became part of the solicitation, and the question posed to the court becomes whether the agency was reasonable in allowing Noble to match the prices of its GSA Schedule contract to the Market Basket after the bid was submitted.

We hold that the Navy was reasonable in doing so. As Noble points out, the answer appears to go beyond the question. The answer allows conformance of the GSA Schedule prices to those actually bid so long as all products offered are "on schedule at the prices proposed" within the thirty-day transition period. There is no question that GSA approved Noble's updated price list within that period of time. We think a literal and natural reading of the answer warranted Noble's assumption; i.e., that it could bid on the understanding that it had time to revise its GSA Schedule to conform to the prices included in its Market Basket. For the same reason, we conclude that the Navy did not err in accepting Noble's bid. While OSC's assumption as to what was permitted may have been reasonable as well, we view that not to be controlling.[13] What matters is that the agency's construction of its own

---

[12](...continued)
prices. Even with respect to potential prejudice to OSC, moreover, OSC has not alleged that it would have offered lower prices if it had known it could do what Noble did.

[13]This does mean, however, that there is no basis to grant defendant's
(continued...)

solicitation was not unreasonable.

We further hold that the Navy's treatment of the proposals did not violate applicable regulations. FAR 15.404-1(b)(2)(i) provides that,

> (2) The Government may use various price analysis techniques and procedures to ensure a fair and reasonable price. Examples of such techniques include, but are not limited to, the following:
>
> (i) Comparison of proposed prices received in response to the solicitation. Normally, adequate price competition establishes a fair and reasonable price . . . .

48 C.F.R. § 15.404-1(b)(2)(i) (2012). The agency adhered to this requirement.

## CONCLUSION

Defendant's motion to dismiss is denied.[14] Plaintiff's motion for judgment on the administrative record is denied. Defendant's and intervenor's cross-motions for judgment on the administrative record are granted. The clerk is directed to enter judgment accordingly. No costs.

s/Eric G. Bruggink<br>
ERIC G. BRUGGINK<br>
Judge

---

[13](...continued) motion to dismiss for lack of standing. *See Blue & Gold Fleet L.P., v. United States*, 492 F.3d 1308, 1313 (Fed. Cir. 2007) (requiring that offerors challenge "a patent error" in a solicitation before the proposal due date).

[14] See footnote 10.